Nancy ATKINS

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services.

Civ. A. No. 87–4648.

United States District Court,
E.D. Pennsylvania.

June 27, 1988.

---

Filmore S. Harowitz, Philadelphia, Pa., for Nancy Atkins.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for Secretary of Health and Human Services.

## MEMORANDUM

NEWCOMER, District Judge.

I have before me cross-motions for summary judgment in a Social Security disability case. For the following reasons, the plaintiff's motion will be granted and the Secretary of Health and Human Services' (Secretary) motion will be denied.

## I. FACTUAL BACKGROUND

### A. MEDICAL HISTORY

The plaintiff was born on June 5, 1938 and was 47 years old at the time of the administrative hearing. Plaintiff has a tenth grade education and has past relevant work experience as a procurement clerk in the garment industry (R. 40–43). The plaintiff claims that three infirmities render her disabled as defined in the Social Security Act ("Act"), 42 U.S.C. §§ 301–1382 (1982).

On September 29, 1984, plaintiff went to the Pennsylvania College of Optometry complaining of a haze over her right eye. A fluorescein angiography indicated "ex-

tensive capillary nonperfusion distal to the seafans in the temporal periphery of both eyes, most consistent with hemoglobin SC [sickle cell] disease." (R. 152). This condition required the plaintiff to undergo three surgical operations on her eye prior to the hearing and another operation since the hearing. (R. 182). The operations discussed in the record reportedly went well with no complications. (R. 154 & 158). In lay terms, Dr. Edward Deghin reported on March 20, 1985, that plaintiff's sight was correctable to 20/40 in each eye. (R. 117).

On March 27, 1985, plaintiff underwent an audiologic analysis with Dr. Alan Berger. The hearing test showed negative pure tone stingers at 500, 1k and 2k: 8 to 2, left profound sensory-neural hearing loss, and no response to sound in the left ear. (R. 111–12). In lay terms, the plaintiff is completely deaf in the left ear, but has hearing in the right ear.[1] This condition has caused vertigo, disequalibrium, and tinnitus (R. 111) which leave the plaintiff constantly dizzy and has caused her to fall. (R. 52).

In a report dated March 19, 1985, Dr. John Duda stated that the plaintiff was under his care for moderately advanced arthritis of the right knee. Dr. Duda further reported that plaintiff's condition was sufficiently severe to limit her ability to stoop, bend, kneel, and climb stairs, but that "[s]he should certainly be able to be employed in a sedentary position where requirements do not necessitate lifting over 10–15 lbs., or the above noted restrictions." (R. 110). On April 3, 1985, the plaintiff's condition apparently became so severe that Dr. Duda was required to perform an arthroscopy, lavage and synovial biopsy of the right knee which revealed diffuse degenerative changes in all three compartments and synovitis. Degenerative changes were also noted in both menisci. (R. 144).

Plaintiff was then examined by Dr. Bruce Hoffman on July 8, 1985. In his report dated July 24, 1985, Dr. Hoffman states that X-rays showed "mild to moderate osteoarthritis of the knees, with medial joint space narrowing and osteophyte formations." (R. 136). Further tests revealed that her right knee was slightly swollen, with minimal warmth and mild tenderness, but that she was otherwise stable with no swelling in other joints. (R. 136).

On August 23, 1985, plaintiff's condition had apparently degenerated to the point that Dr. Duda was required to perform an uncemented total knee arthroplasty on the right knee (surgical replacement of the knee). (R. 145–46). On October 8, 1985, Dr. George McLaughlin examined the plaintiff and reported that she looked much better overall, and on January 21, 1986, he reported that she looked good and walked well. (R. 166).

The Secretary's consultative physician, Dr. Donald Lieberman, then examined the plaintiff on January 28, 1986. In his summary, Dr. Lieberman observed that:

This patient complains of severe pain in multiple joints. In truth, I can find very little synovitis of her joints although the range of motion is extremely painful from the shoulders and wrists. She did show evidence of carpal tunnel syndrome bilaterally with the right being greater than the left as evidenced by a positive Tinnel's sign.

I was unable to move her joints especially the knees, without severe pain. The right knee was much more painful than the left.

It is uncommon to have a patient with severe rheumatoid arthritis without marked synovitis, however, occasionally the disease is limited to one or two joints. She does have a positive rheumatoid factor. Her synovium did show synovitis on biopsy. She did have an elevated sed rate and I believe this patient does in fact, have rheumatoid arthritis.

She is on Plaquenil. She has been on gold and she is on Prednisone as well. *I do believe that her inability to ambu-*

---

1. The record is not clear as to the hearing in plaintiff's right ear. Dr. Berger's report indicates that, while the examiner was unable to determine whether there was a problem with the right ear, the examiner believed that there was. Since the record is unclear on this point, I will assume that the plaintiff has hearing in her right ear.

*late is quite severe and that the patient was not performing unduly for me.* (R. 172) (emphasis added).

The plaintiff then underwent an arthroscopy of her left knee on September 10, 1986, which indicated rheumatoid arthritis and has forced the plaintiff to wear a rubber knee brace on her left knee and an air cast on her left ankle. (R. 189). Finally, Dr. Duda stated in a letter dated December 29, 1986 that, because of probable loosening at the bone prosthetic interface of the patellar component, the plaintiff will require further surgery on her right knee. (R. 188).

### B.  PROCEDURAL HISTORY

On March 11, 1985, plaintiff applied for disability insurance benefits claiming that she had been disabled since November 17, 1982 due to arthritis, profound deafness in the left ear, and congenital eye problems from sickle cell disease. (R. 67–70). The Office of Disability Operations of the Social Security Administration denied Plaintiff's application both initially and on reconsideration, concluding that the plaintiff was not disabled as defined under the Act and was therefore not entitled to disability insurance benefits. (R. 71 & 74).

The case was then considered *de novo* by an administrative law judge (ALJ), before whom plaintiff was represented by counsel. In his decision dated June 10, 1986, the ALJ held that the plaintiff was able to perform her past relevant work and was therefore not disabled for the purposes of the Act. (R. 25). The case was then reviewed by the Appeals Council which determined that the plaintiff was unable to perform her past relevant work as a procurement clerk but that she retained her residual functional capacity for at least sedentary work and thus, was not disabled as defined in the Act. (R. 8).

### II.  DISCUSSION

To be entitled to disability benefits or disability insurance benefits, a claimant must be "disabled" as defined in the Act.

Disability is defined in section 223 of the Act as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ... [and] if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

42 U.S.C. § 423(d)(1)(A) & (2)(A).[2]

The Department of Health and Human Services (HHS) has promulgated regulations that provide further guidance in determining whether a claimant is disabled. The regulations set forth a five-step analysis to determine whether, for the purposes of the Act, the claimant is disabled. The five inquiries involved under the regulations provide:

> [1] *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.
>
> [2] *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.
>
> [3] *When your impairment(s) meets or equals a listed impairment in Appendix 1.* If you have an impairment(s)

---

**2.** Section 223 of the Act concerns disability insurance benefits. Section 216(i) of the Act imposes similar requirements for disability benefits. *See* 42 U.S.C. § 416(i).

which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

[4] *Your impairment(s) must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

[5] *Your impairment(s) must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled.

20 C.F.R. § 404.1520(b)–(f) (1987).

Under this analysis, the Third Circuit has concluded that, once a claimant has shown that she has a severe impairment which prevents her from continuing at her previous occupation, "the burden of proof shifts to the Secretary to show that the claimant, given her age, education and work experience, has the capacity to perform specific jobs that exist in the national economy." *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir. 1979).[3] This shifting burden obviates the claimant from having to bear the almost insurmountable burden of proving a negative—that there is no work in today's market which she is capable of performing.

When reviewing the decision of the Secretary, I may not disturb that decision if it is supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979) (quoting *Richardson,* 402 U.S. at 401, 91 S.Ct. at 1427).

As the Third Circuit commented:

This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is over-whelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusions.

*Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). Thus, my determination of whether the Secretary's decision is supported by substantial evidence must be based on this Circuit's previous determina-

---

**3.** Subsequent to the decision in *Rossi,* the HHS adopted the regulations discussed in this memo. Although the regulations appeared to replace the analysis expressed in *Rossi,* the Third Circuit expressly rejected this conclusion in *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982). The court in *Santise* held that:

It remains true, even under the regulations, that once the claimant has "carr[ied] the initial burden of demonstrating by medical evidence that he is unable to return to his former occupation," the Secretary must establish—with "substantial evidence," 42 U.S.C. § 405(g)—that the applicant, in view of his age, education, work experience, and degree of impairment, "has the ability to engage in alternative substantial gainful employment activity,"

*Id.* at 938 (citations omitted). *See also Ferguson v. Schweiker,* 765 F.2d 31, 36 (3d Cir.1985).

Although the five-step analysis outlined in the regulations does not change the shifting burdens articulated in *Rossi,* the requirement that the Secretary show specific jobs in the national economy which the claimant is capable of performing has been superceded by the regulations. Section 201.00 of Appendix 2, Subpart P, provides that "[a]pproximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy." 20 C.F.R. § 201.00, App. 2, Subpt. P, Pt. 404. Thus administrative notice is now taken that these jobs exist, removing the burden formerly upon the secretary.

tions defining substantial evidence and the fact contained in the record before me.

■ The ALJ concluded that the plaintiff was not disabled as defined in the Act because she neither suffered from a severe impairment under the second step of the regulations nor was prevented from performing her past relevant work as a procurement clerk under the fourth step of the regulations. (R. 24–25). This decision was revised by the Appeals Council, which found that the plaintiff does suffer a severe impairment under the second step of the regulations and that this impairment did prevent the plaintiff from performing her past relevant work under the fourth step of the regulations. (R. 7–8). The Appeals Council affirmed the ALJ's decision, however, as it found that the plaintiff's impairment had not affected her residual functional capacity so as to prevent her from performing other work under the fifth step of the regulations. (R. 8). Since the only basis for the Appeals Council's conclusion that the plaintiff is not disabled is that it found that her impairment had not prevented her from performing other work, my entire review will be to determine whether the Secretary has produced substantial evidence to support this conclusion.[4]

The HHS has provided a labyrinth of grids and tables to determine whether a claimant can perform other work in today's economy. The first step in this process is to determine the claimant's maximum sustained work capability considering her various infirmities. Section 404.1567 divides the physical exertion requirements for work into five categories: Sedentary, light, medium, heavy, and very heavy work. *See* 20 C.F.R. § 404.1567. Once the claimant's maximum sustained work capability is determined, the appropriate table is selected and, according to the claimant's age, education, and previous work experience, she is determined to be either disabled or not

disabled. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. However, if a claimant is unable to perform sedentary work—the least demanding under the regulations—she will not be considered able to perform other work in today's economy.

■ In this case, the Appeals Council determined that, considering the plaintiff's arthritis and visual and hearing impairments, her maximum sustained work capacity would allow her to perform sedentary work as defined in section 404.1567(a) of the regulations. (R. 8). The Appeals Council then selected the appropriate table and found that, considering the plaintiff's age, education, and past work experience, she was not disabled. (R. 8). After carefully reviewing the record before me, I conclude that the Appeals Council's determination that the plaintiff was able to perform sedentary work as defined in section 404.1567 was not supported by substantial evidence.

Sedentary work is defined in section 404.1567 as work that:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Not only is the record devoid of substantial evidence to support a finding that the plaintiff was able to perform sedentary work, it is replete with evidence to show that she was unable to perform such activity and that she was hence, disabled.[5]

■ The Secretary's determination that the plaintiff was not disabled fails

---

4. Where the ALJ and the Appeal Council have disagreed, the decision at the Appeals Council is the final decision of the Secretary which must be supported by substantial evidence. *See Welch v. Heckler,* 808 F.2d 264, 266–67 (3d Cir. 1986).

5. Where the administrative record has been fully developed and it contains substantial evidence that the claimant is disabled, the reviewing court may reverse and direct that benefits be awarded and need not remand. *Gilliland v. Heckler,* 786 F.2d 178, 184–85 (3d Cir.1986).

simply because it did not consider the plaintiff's subjective complaints of pain. The Third Circuit has held that the Secretary's determination must seriously consider subjective complaints of pain and that such pain can, by itself, support a claim for disability benefits and may be disabling. *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). The Secretary should also accord such complaints great weight when they are supported by medical evidence. *Tayborn v. Harris,* 667 F.2d 412 (3d Cir. 1981). Even pain unaccompanied by objectively observable symptoms which is nevertheless real to the sufferer and is so intense as to be disabling will support a claim for disability benefits. *Id.* Where the plaintiff's testimony as to pain is reasonably supported by medical evidence, the ALJ or Appeals Council may not then discount plaintiff's pain without medical evidence which expressly contradicts plaintiff's testimony. *See Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir.1984). While objective medical evidence of some condition which could reasonably produce pain must exist, there need not be objective evidence of the pain itself. *Id.* at 1071.

In the present case, the plaintiff complained that she suffers from a great deal of pain as a result of her arthritis. The plaintiff testified before the ALJ that the pain from arthritis prevents her from shopping, doing housework, using public transportation, driving, attending church, and even climbing stairs. (R. 58–62). The Secretary's own consultative physician, Dr. Lieberman, testified that the motion in plaintiff's arm is extremely painful and that her knees could not be moved without severe pain. (R. 172). Furthermore, Dr. Lieberman stated his belief that the plaintiff's "inability to ambulate is quite severe and that the patient was not performing unduly for me." (R. 172). This report by Dr. Lieberman is particularly credible considering that he was retained as an objective expert by the Secretary.

The ALJ considered Dr. Lieberman's report but rejected it as Dr. McLaughlin's report observed that the plaintiff had looked good and walked well one week prior to Dr. Lieberman's report. (R. 23).

Thus, the ALJ concluded that the plaintiff's subjective complaints of pain were not credible and rejected them. In the Appeals Council's decision, however, Dr. Lieberman's report was completely ignored and only Dr. McLaughlin's report was considered. This was inappropriate. Since the Appeals Council's determination that the plaintiff was not disabled was based on different grounds than the ALJ's decision, the Appeals Council was also required to address Dr. Lieberman's report. The Third Circuit has repeatedly asserted that the Secretary may not reject conflicting probative evidence without any explanation. *Kent,* 710 F.2d at 115 (quoting *Kennedy v. Richardson,* 454 F.2d 376, 378–79 (3d Cir. 1972)).

■ Instead of considering the plaintiff's subjective complaints of pain and the medical evidence that substantiated these complaints, the Appeals Council simply concluded that "[t]he testimony of the claimant as to her subjective pain, dizziness, and right eye blindness is not credible." (R. 8). Where the plaintiff's subjective complaints of pain are supported with medical evidence, the Appeals Council cannot simply dismiss them without explanation. Otherwise, the adjudicator could substitute his own medical diagnosis for that contained within the record. "While the ALJ is entitled to discredit the claimant's testimony as to pain, he is required to state the facts upon which he bases his conclusion which must be both clear and reasonable." *Singleton v. Schweiker,* 551 F.Supp. 715, 722 (E.D.Pa.1982) (citation omitted). *See also Kent,* 710 F.2d at 115 (citing *Gober v. Matthews,* 574 F.2d 772 (3d Cir.1978); *Schaaf v. Matthews,* 574 F.2d 157 (3d Cir. 1978)).

■ Additionally, where the claimant suffers both exertional and non-exertional limitations, the Secretary has the burden of showing, through the testimony of a vocational expert, that the claimant's non-exertional limitations do not prevent the claimant from performing other work. *Bryant v. Schweiker,* 537 F.Supp. 1, 2 (E.D.Pa. 1982). In the present case, the Secretary

adduced no evidence from a vocational expert on the effect that plaintiff's visual and auditory limitations have on her residual functional capacity. Although these oversights are more than sufficient to warrant a remand of this case, I find that the record contains at least substantial evidence indicating that the plaintiff's exertional limitations alone prevented her from performing even sedentary work and that she is therefore disabled.

First, there is no reason to presume that Dr. McLaughlin and Dr. Lieberman's reports are conflicting. Nowhere in the HHS' regulations is there a requirement that a claimant be in constant, immobilizing pain; it is certainly conceivable that the plaintiff's condition vacillates—it is worse on certain days than on others. As the Third Circuit recognized:

> Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.... It is well established that sporadic and transitory activity does not disprove disability.... "[the claimant's] sporadic and transitory activities may demonstrate not his ability but his inability to engage in substantial gainful activity."

*Smith*, 637 F.2d at 971–72 (quoting *Willem v. Richardson*, 490 F.2d 1247, 1249 n. 4 (8th Cir.1974)).

Furthermore, it was wholly inappropriate to conclude that Dr. McLaughlin's report belied Dr. Lieberman's report and the plaintiff's testimony as to her pain. Dr. McLaughlin's one-third page report dated January 21, 1986 is almost entirely illegible; the only legible part reads "[l]ook good, walks well." (R. 166). Dr. Lieberman's report, on the other hand, is a three-page, comprehensive, typed document, the contents of which are unambiguous. I simply find no justification whatsoever for rejecting the complete and legible report prepared by the Secretary's consultative physician for the illegible and scanty report provided by Dr. McLaughlin.

Finally, where a claimant's subjective complaints of pain are supported with competent medical evidence, the Third Circuit requires that these complaints be con-

sidered. Since every orthopedic exam in the record concluded that the plaintiff does in fact have arthritis, I may conclude that this condition prevents her from doing housework, shopping, using public transit, driving, attending church, and even climbing stairs. Starting with this premise, I simply cannot believe that a person who is incapable of performing these basic ambulatory operations is capable of performing sedentary work as defined under the regulations. *See* 20 C.F.R. § 404.1567(a). Since the plaintiff is incapable of performing sedentary work as defined in the HHS regulations, she is unable to perform any other work under section 404.1520(f) of the regulations and is therefore disabled and entitled to benefits.

For the foregoing reasons, the decision of the Secretary is reversed and this case is remanded for the calculation of benefits.

An appropriate order follows.