Sofya ROTSHTEYN, Plaintiff,

v.

Larry G. MASSANARI,[1] Acting Commissioner of the Social Security Administration, Defendant.

No. Civ.A 00–CV–3942.

United States District Court,
E.D. Pennsylvania.

May 31, 2001.

1. Larry G. Massanari became the Acting Commissioner of the Social Security Administration, effective March 29, 2001, to succeed William A. Halter and under Fed.R.Civ.P. 25(d)(1) is automatically substituted as the defendant in this action.

Bruce S. Allen, Rovner, Allen, Rovner, Zimmerman & Kats, Feasterville, PA, for Plaintiff.

Nicholas Cerulli, Social Security Admin. Office of General Counsel, Philadelphia, PA, William B. Reeser, Social Security Admin., Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

MELINSON, Chief United States Magistrate Judge.

This action was brought pursuant to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Sofya Rotshteyn for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381–1383f. Presently before this Court are the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED, and Defendant's

motion for summary judgment is GRANTED.

### PROCEDURAL AND FACTUAL HISTORY

Rotshteyn filed an application for SSI on June 19, 1997, alleging a disability due to migraines and severe allergic reactions to medications. (Tr. 73, 89–91). This application was denied initially and upon reconsideration. (Tr. 57). On November 25, 1998, a hearing was held before an Administrative Law Judge ("ALJ"). The ALJ received testimony through a Russian interpreter from Rotshteyn, who was represented by counsel. (Tr. 34–54). A vocational expert ("VE"), Jeannine Salek, also testified.

The ALJ denied Rotshteyn's claim for benefits in his decision dated March 9, 1999. (Tr. 12–25). Rotshteyn timely requested review by the Appeals Council, which was denied. (Tr. 4–5). Therefore, the ALJ's decision became the final decision of the Commissioner. Having exhausted her administrative remedies, Rotshteyn filed a complaint with this court seeking judicial review of the Commissioner's final decision denying benefits. On March 30, 2001, pursuant to F.R.C.P. 73, the parties consented to this court's exercise of authority under 28 U.S.C. § 636(c) to conduct all proceedings. Hence, this court's decision is a final order in this matter.

The relevant facts are undisputed. Rotshteyn was fifty-seven (57) years old[2] at the time of her administrative hearing. She cannot speak English, but graduated from high school in the former Soviet Union in 1959 and had one year of schooling as a practical nurse. She is married and lives with her husband, who works part-time. Rotshteyn receives public assistance in the form of Medicaid. Rotshteyn worked as a nurse's aide[3] in the Soviet Union until November 26, 1982, when she quit her job due to allergic reactions. She came to the United States as a refugee under the Immigration and Naturalization Act on October 17, 1996.

Prior to arriving in the United States, Rotshteyn was treated sporadically from 1972 to 1992 for various medical conditions such as chronic infectious allergic encephalitis, chronic cholecystosis pancreatitis, chronic gastritis, drug allergies, and acute chronic lumbosacral radiculitis.

After arriving in the United States, Rotshteyn treated with Galina Uklonsky, M.D. from November 4, 1996 to September 18, 1997 for tension headaches and depression. Dr. Uklonsky opined that Rotshteyn suffered from a severe emotional disorder related to her prior medical history. She referred Rotshteyn to an allergist and neurologist. Rotshteyn's examinations with these physicians on March 19, 1997 and August 25, 1997 revealed essentially normal physical results. Rotshteyn's neurologist, Mark Faynberg, M.D., concluded that Rotshteyn's complaints of headaches were related to her depression, and he recommended that she see a psychiatrist. From September 1997 to October 1998, Rotshteyn saw various psychiatrists, including Dr. Duvall, associated with a psychiatric clinic, PATH, Inc. (People Acting to Help). Rotshteyn was diagnosed with major depression but improved under psychiatric care and medications.

---

2. Under 20 C.F.R. § 416.963(d), Rotshteyn is classified as a "person of advanced age." Advanced age is defined as "the point where age significantly affects a person's ability to do substantial gainful activity."

3. The VE classified this work as semi-skilled and performed at a medium to heavy level of exertion. (Tr. 43).

Rotshteyn was examined, at the Commissioner's request, by Dr. Phillip A. Lipson, D.O. in September of 1997. On November 3, 1997, again at the Commissioner's request, Rotshteyn was evaluated by psychiatrist, Boris Klyashtorny, M.D. Physicians for the State agency, Fred Myers, M.D. and Sharon Wander, M.D., reviewed Rotshteyn's medical records in December 1997 and April 1998. In December 1997, April 1998, and July 1998, three psychologists for the State agency reviewed Rotshteyn's records. While Dr. Lipson found Rotshteyn severely functionally limited, the remaining State physicians, psychologists, and psychiatrist found Rotshteyn only slightly to moderately limited in her daily functioning.

### DISCUSSION

■ The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's final decision. *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986); *Jones v. Sullivan,* 954 F.2d 125, 127–28 (3d Cir.1991). The factual findings of the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. *Morales v. Apfel,* 225 F.3d 310, 316 (2000) (citing 42

U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Plummer v. Apfel,* 186 F.3d 422 (3d Cir.1999)). *See also Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979).

■ The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims for SSI. This five-step evaluation is codified at 20 C.F.R. § 416.920.[4] The Act provides that a claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.905. In pursuing a disability claim under the Act, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). *See Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). The claimant must provide the medical evidence which indicates that there is an impairment and the extent of its severity. 42 U.S.C. § 423(d)(5). Other

**4.** These steps are summarized as follows:
 1. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed. If not, proceed to Step 2. 20 C.F.R. § 416.920(b).
 2. If the claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. If there is a severe impairment, proceed to Step 3. 20 C.F.R. § 416.920(c).
 3. If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. If not, proceed to Step 4. 20 C.F.R. § 416.920(d).

 4. If the claimant retains residual functional capacity to perform past relevant work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step 5. 20 C.F.R. § 416.920(c).
 5. The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant is or is not disabled. 20 C.F.R. § 416.920(f).
 *See also Brewster v. Heckler,* 786 F.2d 581, 583–84 (3d Cir.1986).

factors which the Commissioner must consider in determining whether a claimant is disabled within the meaning of the Act are: (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the claimant's age, educational background, and work history. *Hammerstone v. Heckler,* 635 F.Supp. 1089, 1092 (E.D.Pa.1986) (citing *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972)). The claimant satisfies her burden by showing an inability to return to her past relevant work. *Doak,* 790 F.2d at 28, *Rossi v. Califano,* 602 F.2d 55, 57 (3d Cir.1979) (citing *Baker v. Gardner,* 362 F.2d 864 (3d Cir.1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given her age, education, and work experience, has the ability to perform specific jobs that exist in the economy. 20 C.F.R. § 416.920. *See Rossi,* 602 F.2d at 57.

■ In this case, the ALJ determined that Rotshteyn had not engaged in substantial gainful activity since her alleged onset date of June 19, 1997. The ALJ further determined that, while Rotshteyn's depression was a severe mental impairment, her condition did not meet or equal the criteria of a listed impairment. 20 C.F.R., Pt. 404, Subpt. P, App. I, § 12.00. The ALJ also found that Rotshteyn's headaches and hypertension were not severe impairments. He concluded that Rotshteyn had no exertional limitations but had significant non-exertional limitations in that she does not speak English, is unable to understand, remember, and carry out complex, detailed instructions, and cannot tolerate high levels of job stress. The ALJ further concluded that Rotshteyn could not perform her past relevant work as a nurse's aide, but she could perform a limited range of heavy work which exists in significant numbers of jobs in the national economy.

Rotshteyn raises ten points of error allegedly committed by the ALJ. Those points can be fairly summarized as follows: the ALJ erred in 1) not fully developing the record concerning Rotshteyn's mental impairment; 2) not fully crediting Rotshteyn's subjective complaints of pain, discomfort, and fatigue; 3) not fully crediting Plaintiff's treating physician's reports or the non-examining physician's opinion which found Rotshteyn unable to perform substantial gainful activity; 4) finding that Rotshteyn had the residual functional capacity to return to substantial gainful activity, including past relevant work; and 5) relying upon the testimony of the VE which was not consistent with the hypothetical posed by Rotshteyn's attorney. The Commissioner argues that substantial evidence exists to support the ALJ's finding that Rotshteyn could perform substantial gainful activity in the form of a limited range of heavy work.

■ First, Rotshteyn contends that the ALJ failed to fully develop the record concerning her alleged mental impairment. This court disagrees. Generally, hearings to determine whether an applicant is entitled to supplemental security income are not adversary proceedings. *See Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is incumbent upon the Social Security Administration to provide assistance to the claimant in developing the record. *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir.1979). However, the claimant bears the initial burden of proving the existence of a medically determinable condition which is expected to continuously last for not less than twelve months. *See Kent,* 710 F.2d at 114; 20 C.F.R. 416.905.

Under the regulations for the evaluation of mental impairments, the fact finder

must record any findings and limitations to determine whether such an impairment exists. 20 C.F.R. 416.920a(b)(1). If an impairment is found, then the fact finder must determine whether there are medical findings which affect the claimant's ability to work. 20 C.F.R. § 416.920a(b)(2). If there is functional loss, then the degree of such loss must be determined. 20 C.F.R. § 416.920a(b)(3). An ALJ completes an OHA Psychiatric Review Technique Form to properly assess the severity of the mental impairment and its effect on the claimant's functional capacity.

In the instant case, Rotshteyn does not specifically cite to what information should have been obtained to supplement the record concerning her mental impairments. She did not submit any supplemental records regarding her mental impairment along with any petition or appeal she has filed in this matter, including the motion pending before this Court. Moreover, the Commissioner requested several examinations and record reviews by state agency physicians and consultants: on November 3, 1997, a Russian-speaking psychiatrist, Dr. Klyashtorny performed a psychiatric evaluation of Rotshteyn (Tr. 161–164) and in December 1997, April 1998, and July 1998, three psychologists, Ralph Davis, Ph. D., Paul Lanuniziata, Ph.D., and Pamela Tucker, Ph.D., reviewed Rotshteyn's psychological records. The ALJ also considered evidence of diagnostic testing and the reports of Rotshteyn's treating physicians. (Tr. 18–20).

In his decision, the ALJ reviewed the above evidence and accurately recorded the findings of the various physicians and psychologists. The ALJ acknowledged that, based upon the medical findings, Rotshteyn's depression imposes "significant vocational limitations" which were severe but not disabling. (Tr. 18). Specifically, the State agency psychologists each found that Rotshteyn suffered from a non-severe mental impairment that only slightly effected daily living and social functioning and seldom effected concentration. No episodes of decompensation were found. (Tr. 19). The ALJ also noted that Dr. Klyashtorny found Rotshteyn to be awake, alert, and cooperative, but sad. He found no psychomotor abnormalities and noted that her affect was appropriate to her stream of thought. He found her to be oriented in all three spheres with memory intact, fairly good insight and fair judgement. Id. However, Dr. Klyashtorny noted that Rotshteyn denies being able to perform daily activities, denies being interested in group activities, and has compromised concentration due to her medical problems. For reasons discussed below, the ALJ rejected Dr. Klyashtorny's assessment of Rotshteyn abilities in the spheres of her daily activities, social functioning, and concentration noting that the doctor's finding of limitations in these spheres is "as much the result of cultural adjustment difficulties and language barrier as they are the result of her mental impairment." (Tr. 20).

The ALJ concluded that Rotshteyn's daily living activities are only moderately limited due to her mental impairment and that her social functioning is only slightly limited. The ALJ found that there was no evidence of marital difficulties and that, in fact, Rotshteyn has supportive relatives, such as her sister, who help her. The ALJ found that Rotshteyn has friends and can initiate social contact. Id. The ALJ further noted that Rotshteyn's psychiatrists at PATH did not find any significant, ongoing problems in concentration. Id. The ALJ completed a Psychiatric Review Technique Form incorporating the above findings and determining that Rotshteyn had an affective disorder which only moderately affected her daily living activities, slightly affected her social functioning, and sel-

dom affected her ability to complete tasks in a timely manner. (Tr. 26–29). Clearly, the ALJ in the instant case properly followed the procedures set forth in the regulations governing the determination of mental impairments. *See* 20 C.F.R. 416.920a(b)(1)–(3); *Dobrowolsky,* 606 F.2d at 407. Moreover, because the ALJ relied only on evidence that was supported by objective clinical findings, substantial evidence exists to support the ALJ's conclusion.

■■■■■ Second, Rotshteyn argues that the ALJ did not consider her subjective complaints of pain, fatigue, and discomfort. Testimony of subjective complaints of pain is entitled to great weight, particularly when supported by competent medical evidence. *Dobrowolsky,* 606 F.2d at 409. Where such testimony is reasonably supported by medical evidence, an ALJ may not discount such evidence without contrary medical evidence. *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir.1981). Even when not fully confirmed by objective medical evidence, subjective complaints must be seriously considered. 637 F.2d at 972; *Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir.1984).

■■■■■ Although the ALJ is required to give great weight to the claimant's testimony of subjective complaints of pain, he has the discretion to reject partially, or even entirely, such subjective complaints if they are not fully credible. *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974). When considering subjective complaints, the ALJ is entitled to discredit a claimant's testimony, but must state the facts upon which the conclusion is based, which must be both clear and reasonable. *Atkins v. Bowen,* 690 F.Supp. 383, 389 (E.D.Pa.1988). Relevant factors include the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; treatment and response; and physicians' opinions regarding credibility and severity of claimant's subjective complaints. *See* SSR 96–7p (1996). The ALJ is also constrained to consider only those complaints of pain or other symptoms which can reasonably be accepted as consistent with the objective medical evidence, and other evidence. 20 C.F.R. § 416.929(a). Moreover, the claimant must produce medical signs and laboratory findings showing the existence of a medical impairment which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. 416.929(b). Deference must be given to the ALJ's determination in issues of credibility when reviewing the Commissioner's final decision, so long as the ALJ discusses the issue and his finding is supported by substantial evidence. *Alvarez v. Secretary of Health and Human Services,* 549 F.Supp. 897, 899–900 (E.D.Pa.1982).

In the instant case, the ALJ considered, and rejected, Rotshteyn's subjective complaints and their impact on her ability to work:

> Claimant alleges inability to work due to disabling headaches and depression. At hearing, claimant testified she lives in an apartment with her husband. Claimant testified she receives medical assistance from Welfare and she came to the United States in October, 1996 and she speaks no English. Claimant stated she last worked in a hospital 12 years ago and she stopped working when she felt sick. Claimant stated she does not have a driver's license and never had one and she doesn't play any sports. Claimant stated everything was very hard for her and she doesn't want to live and she experiences an awful depression and without help from her sister she couldn't do anything and she doesn't know whether her sister has any income.

Claimant stated she was prescribed medications for depression but she had bad side effects—she experienced difficulty urinating and got a bad rash and she now takes new medications and also takes something for allergies. Claimant stated her eyebrows fell out and she has had hair loss. Claimant testified she doesn't want to see anybody, has no social activities and she asks friends and family not to visit. Claimant stated she does not go to church and does no gardening.

Claimant testified she had been depressed for 12 years in the Soviet Union and since she came to the United States it has become worse. Claimant stated she can't do anything at all, such as housework and she doesn't want to do it. Claimant testified that her sister does the grocery shopping and she said she doesn't turn the television on. Claimant stated she has insomnia and sleeps only in the early morning and goes to bed very late. Claimant stated she sits up and lies down and can't fall asleep. Claimant stated she does not drink alcohol and does not smoke. Testifying about her typical day, claimant stated her sister helps her to wash and dress then claimant stays sitting and she lies down. Claimant stated she gets headaches very often.

Although claimant asserts inability to work due to disabling pain and other symptoms from her above-described problems, her complaints are not credible to the extent that objective test results and credible clinical findings of record do not show impairments with the degree of severity needed to produce the disabling pain and other disabling symptoms asserted. Claimant has a history of working as a nurse's aide in the former Soviet Union and coming to the United States in 1996. The State agency twice rated claimant capable of a full range of heavy work. The evidence of record shows their assessment to be reasonable and credible and does not show impairments severe enough to impose any more significant physical limitations. Claimant also has been diagnosed with depression and three times the State agency found she had a non-severe mental impairment, and although treatment notes show she is depressed and has some sleep difficulties and anxiety, they do not document symptoms so severe that they would be disabling.

(Tr. 15–16).

The ALJ noted that Rotshteyn's diagnostic tests, including an electrocardiogram, an ultrasound and CT scan of her abdomen, and an MRI of her brain, all revealed normal results. (Tr. 16–17). The ALJ also noted that allergist, Jeffrey M. Melin, M.D., reported a normal examination with no indication that Rotshteyn was still allergic to medications. (Tr. 17). Neurologist, Dr. Faynberg, reported a normal neurological examination. *Id.* The ALJ also found that Dr. Lipson, a State agency examining physician, was the only doctor who noted physical limitations. (Tr. 18). Those limitations were not based upon Dr. Lipson's own clinical findings. *Id.* Further, all of Rotshteyn's physical examinations, including those of Rotshteyn's treating physician, Dr. Uklonsky, revealed normal results throughout the alleged period of disability. (Tr. 145–148). For the reasons discussed below, the ALJ properly rejected Dr. Lipson's opinion regarding Rotshteyn's physical limitations. Moreover, the treating physicians' and State agency physicians' findings (other than that of Dr. Lipson) indicated a much greater functional capacity than Rotshteyn admitted. Finally, the record indicates that when Rotshteyn took medication for her headaches, her pain was relieved without disabling side effects.

Nevertheless, the ALJ took into account Rotshteyn's complaints of headaches and depression, noting that she could not perform work which required her to remember, understand, or carry out complex, detailed instructions or which entailed high levels of stress. (Tr. 21). Hence, the ALJ properly took into account Rotshteyn's subjective complaints to the extent that her testimony was credible and her complaints were supported by medical findings that would reasonably be expected to produce the symptoms of which she complained. *See Smith,* 637 F.2d at 972; *Atkins,* 690 F.Supp. at 389; 20 C.F.R. 416.929(a)–(b); SSR 96–7p.

Rotshteyn also contends that the ALJ improperly rejected the opinions of her treating physicians. However, there is no indication in the record that the ALJ rejected her treating physicians' opinions. Rotshteyn presented records from two treating sources, her primary care physician, Dr. Uklonsky, and her psychiatrists at PATH, including Dr. Duvall, none of whom opined that she had a condition that precluded her from working.

In September 1997, Rotshteyn's primary care physician, Dr. Uklonsky, opined that Rotshteyn suffered from a severe emotional disorder and headaches but her memory was not impaired. (Tr. 146–147).[5] The doctor also noted that a psychiatrist had diagnosed Rotshteyn with major depression with anxiety. (Tr. 147). In essence, the doctor's findings merely recited Rotshteyn's subjective complaints of insomnia, constant crying, and inability to cope with stress. Dr. Uklonsky did not conclude that Rotshteyn was limited in her functional capacity.

Dr. Duvall first saw Rotshteyn in September of 1997. He noted that Rotshteyn was tearful, anxious, and had trouble sleeping. He prescribed Serzone and Trazadone. Consequently, Rotshteyn reported sleeping better and feeling less tearful and less anxious. Dr. Duvall also recommended English classes and taking walks before sleep. There is no indication that Rotshteyn followed Dr. Duvall's recommendations. In November of 1997, Rotshteyn complained of increasing dizziness, insomnia, and agoraphobia. He discontinued Serzone and prescribed Fioricet and Benadryl. By December 1997, Rotshteyn again reported improved sleep and decreased irritability. At times, Rotshteyn would refuse to take the full dose of her prescriptions; however, when she did take her full dose, the medication helped her sleep and decreased her headaches.

As early as March 1998, the psychiatrists at PATH reported that Rotshteyn was feeling better after her therapy sessions. By April 1998, Rotshteyn told Dr. Duvall that she had more energy. At that time, Rotshteyn was tolerating her medications well and had a brighter affect. In August of 1998, the psychiatrists discovered that Rotshteyn was allergic to Luvax and prescribed Prozac. Throughout most of 1998, Rotshteyn often reported feeling sad and irritable but overall her condition improved, particularly after discontinuing her use of Luvax. Throughout her treatment, she denied suicidal ideas and had no psychotic symptoms. Rotshteyn's psychiatrists at PATH encouraged increased activity and socializing, Rotshteyn was not hospitalized for depression, and she reported improvement when she took her medication. Once again, there is no indication that any of her physicians found her functionally limited. Hence, Rotshteyn has failed to show that there is medical evi-

---

5. Dr. Uklonsky also found minimal swelling in Rotshteyn's right knee, but her range of motion was normal. (Tr. 146). The doctor also found that Rotshteyn's spine was normal as were her reflexes and motor power in her upper and lower extremities. *Id.*

dence in the record indicating that she was unable to perform substantial gainful activity, let alone that the ALJ disregarded an opinion of a treating physician.

Rotshteyn also argues that the ALJ erred in disregarding the non-examining physicians' reports (those of Dr. Lipson and Dr. Klyashtorny). An ALJ is required to consider the findings of a State agency medical or psychological consultant, but is not bound by their determination as to whether a claimant is disabled. 20 C.F.R. § 416.927(d)(2), (f)(2)(i). The opinion of a State agency consultant is accorded weight after being evaluated under the same factors used to weigh other medical opinion evidence. § 416.927(f)(2)(ii). Those factors include "the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions." *Id.* As such, an ALJ may discredit the unsupported or controverted opinions of a State agency consultant. *See generally Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988); *Newhouse,* 753 F.2d at 286; *Coria v. Heckler,* 750 F.2d 245, 247 (3d Cir.1984).

The ALJ noted that Dr. Lipson, a State agency examining physician, saw Rotshteyn in September of 1997. (Tr. 17). Dr. Lipson reported an essentially unremarkable physical examination that revealed normal sensory and motor findings, intact cranial nerves, and normal coordination and gait. Dr. Lipson noted only slightly elevated blood pressure. *Id.* Dr. Lipson found that Rotshteyn's mental status was grossly abnormal. (Tr. 18). His impression was depression, cephalgia by history, and hypertension. Dr. Lipson also submitted a medical source statement that indicated that Rotshteyn was unable to lift more than ten pounds occasionally and could only stand/walk less than two hours and sit less than six hours in an eight-hour work day. He also indicated that she could not tolerate any postural changes such as climbing or balancing. *Id.* The ALJ concluded that such findings were not supported by Dr. Lipson's own normal physical findings and were inconsistent with other medical evidence such as Dr. Faynberg's and Dr. Uklonsky's opinions. As discussed above, the reports of Rotshteyn's treating and non-treating physicians reveal normal physical and neurological findings. Hence, the ALJ properly discredited Dr. Lipson's opinion given that it was unsupported by objective medical findings and contradicted the other credible medical evidence. *See Frankenfield,* 861 F.2d at 408; *Newhouse,* 753 F.2d at 286.

As previously discussed, the ALJ fully discussed the opinion of Dr. Klyashtorny. (Tr. 19–20). Dr. Klyashtorny noted a problem in Rotshteyn's ability to concentrate but indicated only that it was caused by her medical problems and difficulty adjusting to a new culture. No clinical findings were cited that indicated Rotshteyn's concentration was compromised for reasons other than acculturation difficulties. Moreover, Rotshteyn's treating psychiatrists at PATH never reported "any pattern of significant ongoing disturbances in her concentration." Instead, the doctors' notes from PATH showed "she was able to coherently report on her condition and interact with her therapist." (Tr. 20). As for Dr. Klyashtorny's conclusion that Rotshteyn was significantly limited in her ability to perform daily activities, the ALJ noted that Rotshteyn admits she can perform personal grooming and hygiene with assistance from her sister. *Id.* Even though Dr. Klyashtorny found Rotshteyn's social functioning limited, he did find that she could initiate social contact and Rotsh-

teyn herself admitted to getting along with family members.

The ALJ rejected Dr. Klyashtorny's findings of Rotshteyn's limitations because he attributed Rotshteyn's limitations as much to cultural adjustment difficulties and the language barrier as he did to her mental impairment. *Id.* The ALJ properly discredited Dr. Klyashtorny's opinion because it contradicted Rotshteyn's treating psychiatrists' reports and because Dr. Klyashtorny failed to cite objective medical findings, other than acculturation difficulties, as the cause of Rotshteyn's alleged functional limitations. *See Frankenfield,* 861 F.2d at 408; *Newhouse,* 753 F.2d at 286.

Rotshteyn next contends that the ALJ erred in finding that she has the residual functional capacity to return to substantial gainful activity, including past relevant work.[6] Once a claimant proves she has a severe impairment that precludes her from returning to past relevant work, the burden shifts to the Commissioner to prove that the claimant can perform work that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.920, 416.966. *See Rossi,* 602 F.2d at 57. The Commissioner must consider various factors in determining a claimant's residual functional capacity, including a claimant's age, education, work experience, physical abilities, mental abilities, and limitations caused by medically determinable impairments. 20 C.F.R. §§ 416.920(f), 416.945.

The ALJ determined that, based upon the medical records, Rotshteyn had no exertional limitations and was capable of heavy work with no postural limitations.[7]

The ALJ based this finding on the records of Rotshteyn's treating physicians as well as the State agency doctors. As previously discussed, the ALJ's rejection of Dr. Lipson's report and his reliance upon Rotshteyn's other treating and non-examining physicians constituted substantial evidence to support a finding that Rotshteyn was capable of heavy work. *See* 20 C.F.R. § 416.969a.

Moreover, the ALJ found "significant non-exertional impairments" rendering Rotshteyn unable to "work in jobs requiring the ability to remember, understand and carry out complex, detailed instructions; and, tolerate high levels of job stress." (Tr. 21). This court concluded that the ALJ properly developed the record concerning Rotshteyn's mental impairment and properly disregarded Dr. Klyashtorny's opinion as to Rotshteyn's alleged functional limitations. As discussed, the ALJ's reliance on the records of Rotshteyn's treating psychiatrists at PATH and the findings of the three psychologists who performed a review of Rotshteyn's psychological records was appropriate. Hence, substantial evidence exists to support the ALJ's finding that Rotshteyn's non-exertional limitations, while severe, were not preclusive of work.

The ALJ also considered other medically determinable impairments including Rotshteyn's alleged pain from headaches and hypertension. However, as the ALJ noted, there was no evidence of hypertension in her treating physicians' notes. (Tr. 13, 18). The doctors at PATH noted only normal or slightly low blood pressure during her period of treatment. Dr. Uklon-

---

6. The ALJ specifically found that Rotshteyn was incapable of returning to her past relevant work as a nurse's aide, hence, this point of error is without merit. (Tr. 21, 24—Finding No. 6).

7. Heavy work is defined in the regulations as work involving lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 416.967(d).

sky's records also indicated normal blood pressure readings. *Id.* Hence, the ALJ properly concluded that this impairment did not effect Rotshteyn's functional capacity. As for Rotshteyn's complaints of pain and headaches, this Court has determined that it was proper for the ALJ to not fully credit Rotshteyn's subjective complaints. As such, substantial evidence exists to support the ALJ's finding that Rotshteyn was capable of performing heavy work with some non-exertional limitations.

 Finally, Rotshteyn contends that the ALJ erred in not relying on the VE's response to her counsel's hypothetical question. To determine whether a claimant is capable of performing other substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert. Testimony of a vocational expert constitutes substantial evidence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record. *Chrupcala*, 829 F.2d at 1271. It is not necessary for the ALJ to include facts that are supported by a claimant's subjective testimony only. *Id.*

The ALJ posed a hypothetical to the VE at the administrative hearing in this matter:

I'd like you to consider hypothetically an individual 57 years of age, with training, education, and experience, as in the present case. Who is generally unimpaired exertionally but is unable to understand, remember, or carry out complex and detailed instructions, or to lerate high stress. Given those facts and circumstances, is there any work

the hypothetical individual could perform on a sustained basis?

(Tr. 43). The VE responded that such an individual would be capable of substantial gainful activity as an office cleaner, food preparation work, production worker, or machine tender, all of which existed in significant numbers in the local and national economy. *Id.*

Rotshteyn's attorney then posed the following hypothetical to the VE:

Q: There's an Exhibit number 10 from a doctor that Social Security sent the claimant out to a Dr. Philip Lipson and he filled out a—exertional limitations for the claimant.... He says less than 10 pounds occasionally, stand or walk less than two hours, sit less than six hours, push, pull limited to upper and lower extremities, and postural limitations never for all the categories.... What level is he placing the claimant?

A: It would be less than sedentary.

Q: Okay. There is another Exhibit, number 13, Dr. Boris Husatornie (phonetic) from VDS (phonetic), sent him out, and this was a psychiatric evaluation. And in several categories, activities of daily living, he indicated that she needs help—in fact, I can show that to you—... Based on these limitations, where would—by this doctor, where was he placing the claimant's ability to perform?

A: She would not be able to perform on a consistent basis here, a simple, repetitive job.

Q: Why is that?

A: Because he says she has fair—her ability to perform activities for concentration purposes, if you're compromised with severe headaches, other medical problems, emotional difficulties, poor adjustment, and decline in social maturity, somebody has to have some kind of so-

cial maturity. Considering the description of physical and emotional problems, reaction to conflict is reportedly accompanied by escalation, depression, tearfulness, which is I would say in effective—affective behavior, I think the patient is comprised to her current physical and emotion problems and poor adjustment. She would definitely need assistance in help if a serious accident or hazards occurred, that is—then also, she's unable to get along with immediate—she's able to get along with immediate family matter, is able to initiate social contact only in the Russian language with Russian speaking relatives and friends, so that's, that's not going—I mean—... Oh, then he says that, or in it, that activities of daily living, she denies any capability to perform any activities of daily living, denies cleaning, shopping, or cooking, and using public transportation, maintaining residency. However I find a contradiction to what he says above, is I think this patient is capable of managing her personal funds in a confident manner, I mean to me there, there are contradictory analysis, but as far as the work assessment, the psychiatric affects of, of, of, you know work situation, it would be difficult for her to maintain employment.

(Tr. 44–47). The ALJ rejected Rotshteyn's counsel's hypothetical, as well as the VE's response to that hypothetical, stating that the physical limitations mentioned by Dr. Lipson were not supported by the objective medical evidence. (Tr. 22). The ALJ also rejected counsel's hypothetical as to Rotshteyn's mental limitations as found by Dr. Klyashtorny. He reiterated that he rejected Klyashtorny's findings because they are based, in part, on Rotshteyn's language barrier and acculturation problems. *Id.* Instead, the ALJ properly accepted the VE's response to the ALJ's hypothetical which, as discussed above, ac-

curately represented claimant's age, background, and residual functional capacity. Hence, the ALJ's finding that Rotshteyn was capable of performing various jobs that exist in significant numbers in the national economy is supported by substantial evidence. *Chrupcala,* 829 F.2d at 1271.

## CONCLUSION

For the above reasons, this Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. An appropriate Order follows.