William **MURPHY**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

Civ. A. No. 81–0721.

United States District Court,
E. D. Pennsylvania.

Oct. 5, 1981.

---

Lester Krasno, Maureen Kreuger, Pottsville, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

TROUTMAN, District Judge.

This is an action filed pursuant to Section 405(g) of the Social Security Act (Act), 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services (Secretary) denying plaintiff's claim for disability benefits under Title II of the Act.

Plaintiff is 43 years old (Tr. 16, 31). He has an eighth-grade education (Tr. 9, 16, 33), and has had work experience as a laborer in the construction and garment industries, and as a miner (Tr. 9, 17, 34–38). He alleges inability to work as of April 26, 1979 (Tr. 71) because of a broken heel, ankle and knee problems, anthracosis and emphysema (Tr. 17, 71).

Plaintiff filed an application for disability benefits on November 30, 1979 (Tr. 71–74). The application was denied initially and on reconsideration, after the Pennsylvania State Agency, upon evaluation by a physician and a disability examiner, had found that plaintiff was not under a disability within the meaning of the Act (Tr. 103–105).

The case was considered *de novo* by an Administrative Law Judge (ALJ) before whom plaintiff, his attorney, and a vocational expert appeared. In a decision dated November 10, 1980, the ALJ determined that the plaintiff had the residual functional capacity to perform work of a sedentary nature (Tr. 17–18). Therefore, the ALJ concluded that plaintiff was not disabled for purposes of the Act and thus not entitled to disability insurance benefits (Tr. 18).

The Appeals Council denied the plaintiff's request for a review of this decision on January 12, 1981, thereby making it the final decision of the Secretary (Tr. 3).

The issue before the Court is whether the Secretary's final decision denying plaintiff's claim for disability benefits is supported by substantial evidence.

The principles of law governing judicial review of decisions which concern benefits under the Social Security Act can be found, simply stated, in *Warhola v. Harris*, 509 F.Supp. 1236 (E.D.Pa.1981):

"The Social Security Act limits judicial review of the Secretary's final decision. 42 U.S.C. § 405(g). If the Secretary's decision is supported by substantial evidence it must be affirmed by the Court. 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389 [91 S.Ct. 1420, 28 L.Ed.2d 842] (1971). Substantial evidence is evidence which a reasoning mind would accept as sufficient to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. *Dobrowolsky v. Califano*, 606 F.2d 403 (3d Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)."

The burden of establishing disability is placed on the plaintiff and disability must be shown in accordance with the definition thereof under the Act. 42 U.S.C. § 423(d)(5); *Hess v. Secretary of Health, Education and Welfare*, 497 F.2d 837 (3d Cir. 1974); 42 U.S.C. § 423(d)(1). Also, while a stringent requirement of proof of disability exists under the Act, there must also be substantial evidence to support the Secretary's findings and decision. *Stubbs v. Mathews*, 544 F.2d 1251 (5th Cir. 1977).

To sustain his burden, the plaintiff must first show a medically determinable physical or mental impairment, and second, the impairment must prevent the plaintiff from engaging in any substantial

gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 423(d)(2)(A); *Hargenrader v. Califano,* 575 F.2d 434 (3d Cir. 1978); *Baker v. Gardner,* 362 F.2d 864 (3d Cir. 1966). Substantial gainful activity is defined as work which exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The determination of plaintiff's ability to engage in any substantial gainful activity is made with consideration of four elements of proof: (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the plaintiff's age, education, and work history. *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972); *DePaepe v. Richardson,* 464 F.2d 92 (5th Cir. 1972).

Plaintiff originally injured his ankle and leg in April of 1979 as a result of a fall at work (Tr. 107, 109). He was first hospitalized at the Pottsville Hospital and Warne Clinic on April 26, 1979 (Tr. 106–112). His condition was diagnosed as a "fracture of the left oscalsis" (Tr. 106) and he complained of severe pain, limitation of movement, and pain in the right side knee area (Tr. 107, 109). The fracture was somewhat comminuted but it was noted that "the position of the fragments [was] quite good, particularly considering the amount of comminution present" (Tr. 108, 112). Surgery was performed by the treating orthopedic surgeon, Dr. Heistand, to close the reduction of the left oscalsis and there was no subsequent X-ray evidence of non-union (Tr. 115). Plaintiff received Demerol and Indocin while hospitalized (Tr. 107) and after gradual improvement of his condition, he was discharged on May 3, 1979 (Tr. 107).

Later examination by Dr. Heistand indicated that plaintiff enjoyed full weight-bearing capacity (Tr. 115) and that plaintiff could function with certain restrictions as to the length of time he could stand or walk, to the weight plaintiff can lift, to the use of plaintiff's left foot and to his ability to bend, squat, crawl or climb (Tr. 116). The physician noted that plaintiff suffered sciatica and back pain related to the sciatica

(Tr. 117). He also indicated that plaintiff uses a cane to alleviate this pain and not for weight-bearing (Tr. 117).

In a letter dated May 6, 1980, Dr. Won Young Lee stated that plaintiff's clinical diagnoses were pulmonary emphysema and pulmonary anthracosilicosis (Tr. 118). Dr. Lee also stated that plaintiff was "completely disabled" from those diseases on February 28, 1980 (Tr. 118). He referred plaintiff for further tests to the Good Samaritan Hospital, Pottsville. The resulting radiology report stated that plaintiff suffered from pneumoconiosis with early signs of emphysema (Tr. 119) and the cardiopulmonary report stated that the studies were abnormal, showing a severe degree of obstructive and restrictive lung disease, carrying with them a "poor prognosis for long term survival" (Tr. 120).

Plaintiff was again hospitalized between June 1, 1980, and June 14, 1980, for pain in the lower back and left leg (Tr. 141–143). Plaintiff also complained of exertional dyspnea (Tr. 132) and that his leg and back pain became more severe with any exertion. Plaintiff received Brondecon, Tedral, Metrin and Clinerol to facilitate his breathing and received Talwin and Cortisone for pain along with Tylenol and aspirin (Tr. 130).

At the administrative hearing plaintiff testified that he has "pain all the time" as well as discomfort even as he was sitting at the hearing, (Tr. 45–46, 57) and that he suffers increased pain when he stands or walks (Tr. 45, 57). The plaintiff stated that initially he used two crutches to walk, then one and now he uses a cane (Tr. 43). He also testified that he has difficulty sleeping at night due to chest pain and, therefore, must sleep in a sitting or vertical position (Tr. 47, 58).

Plaintiff further testified that he was involved in few activities. He drives approximately 5 to 10 miles to visit family or friends and goes to church (Tr. 49). He never attends sporting events, does not have any hobbies, or perform any chores around the house (Tr. 50). Plaintiff smokes

one-half pack of cigarettes a day, against Dr. Lee's orders (Tr. 52).

A vocational expert also testified at the hearing (Tr. 58–69). He responded to a series of hypotheticals, based on the medical evidence and testimony of record. He classified the plaintiff's work experience as largely unskilled, light to medium and heavy work (Tr. 60–61), although he indicated that certain elements of plaintiff's mining experience could be classified as semi-skilled (Tr. 62). When asked to assume the plaintiff's impairment and restrictions as set forth in the medical records and the assumption that plaintiff would be limited to sedentary work in a certain restricted environment, the vocational expert responded that such work existed in the national and regional economy (Tr. 62–65). When asked to assume in addition that plaintiff's testimony and claims of pain and limitation were true, the vocational expert said he could not suggest any employment which plaintiff could perform (Tr. 67–68).

■ Subjective complaints of pain must be considered by the ALJ in making a determination of disability. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). Pain, by itself, may be disabling. *Northcutt v. Califano,* 581 F.2d 164 (8th Cir. 1978); *Smith v. Califano,* 637 F.2d 968 (3d Cir. 1981); *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974). The plaintiff and his subjective complaints of pain must be examined in the light of all the other evidence of record in order to determine whether the degree of pain could be so severe and continuous as to render the plaintiff incapable of carrying on any occupation suitable to plaintiff's age, education, work experience and residual functional capacity. *Bolton v. Secretary of Health and Human Services,* 504 F.Supp. 288 (E.D.N.Y. 1980). Complaints of pain which are grossly disproportionate to the medical findings may be discounted as not credible. *Baith v. Weinberger,* 378 F.Supp. 596 (E.D.Pa.1974). But here there is no such gross dispropor-

tionality of the complaints to the medical findings.

In his "Evaluation of the Evidence" the ALJ recognizes the pain which plaintiff says he experiences and even directly relates the pain to the medical evidence of record by referring specifically to medical documents entered as exhibits (Tr. 15). This recognition is in opposition to his "Findings of Fact" Number 10 where he finds plaintiff's testimony to be not credible.

■ From a careful reading of the ALJ's findings, evaluation, and decision on the evidence, it appears that his decision to deny disability benefits was premised upon the broken heel and ankle and knee problems. However, after a review of the entire record in this case, it is inescapable that the thrust of plaintiff's claim of disability is not based on just those injuries but rather upon a combination of injuries and conditions, including anthracosilicosis and pulmonary emphysema. Unless an ALJ considers all of a claimant's impairments, singly *and in combination,* his decision is not supported by substantial evidence. *Brittingham v. Weinberger,* 408 F.Supp. 606 (E.D.Pa.1976); *Powell v. Richardson,* 355 F.Supp. 359 (E.D. Pa.1973). Here the ALJ considered only one doctor's evaluation based on his knowledge of orthopedics and disregarded the cardio-pulmonary evaluations of other physicians in their areas of expertise.

■ The narrow consideration of the medical evidence further contradicts the ALJ's determination of the non-credibility of the plaintiff's testimony. The evidence upon which the ALJ bases his finding of noncredibility is clearly insubstantial.

The vocational expert was asked by the ALJ if work existed in the national or regional economy which plaintiff could perform, assuming the medical evidence of record and plaintiff's testimony to be true. He responded that he knew of no work, however sedentary, that plaintiff could perform with these limitations. In light of all

the medical and vocational evidence of record and the subjective complaints of the plaintiff, there is little doubt as to the ALJ's error in his decision.

In *Smith v. Califano*, 637 F.2d 968 (3d Cir. 1981), the Court, when faced with a similar situation, stated:

"The ALJ has decided every major issue of credibility against the claimant. Yet, when carefully reviewing the actual facts of record on which the ALJ presumably based his findings, it seems that the evidence in support of his adverse ruling is so slight that upon consideration of the entire record, one must wonder whether his findings, particularly his credibility findings, were based on a mere speculative hunch or were reasoned findings." 637 F.2d at 969.

As concluded in *Smith*, we do not find a sufficient basis for the findings of the ALJ. As in *Smith*, we conclude the ALJ made an "impermissible inference of no disability".

We find and conclude that the decision of the Secretary denying plaintiff's claim for disability benefits is not supported by substantial evidence. We shall grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.