Irene HAMMERSTONE

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

Civ. A. No. 84–6154.

United States District Court,
E.D. Pennsylvania,
Civil Division.

April 17, 1986.

Jack I. Kaufman, Allentown, Pa., for plaintiff.

Edward S.G. Dennis, Philadelphia, Pa., for defendant.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Presently before me are the objections to the Report and Recommendation filed by the United States Magistrate in the above-captioned matter regarding the parties' cross motions for summary judgment in an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The cross motions were brought to review the final decision of the Secretary of Health and Human Services ("Secretary") which denied plaintiff's concurrent claims for disability insurance benefits and supplemental security income provided under Title II and Title XVI of the Social Security Act. The Magistrate to whom this was referred recommended that plaintiff's motion for summary judgment be denied and that defendant's motion be granted. Pursuant to the provisions of 28 U.S.C. § 636, I must now make a de novo determination.

## FACTS AND PROCEDURAL HISTORY

The facts in this case are as follows. Plaintiff, Irene Hammerstone, is a 50 year old woman with a high school education. She has past experience as a metal presser and a breader in a restaurant.

Plaintiff's medical record contains a history of hospital treatment, both in-patient and out-patient, covering the period between 1980 and 1983. From February to October of 1980, plaintiff was treated for a urinary tract infection, hemorrhoids, pleurisy, and upper gastro-intestinal bleeding caused by a duodenal ulcer. (Tr. 148, 155, 157). While in the hospital for treatment of the ulcer, in October of 1980, plaintiff collapsed and fell to the floor and experienced immediate left side weakness. A brain scan of the plaintiff was negative. (Tr. 160). At first plaintiff was diagnosed as having a mild internal carotid artery disease. Final diagnosis was a cerebral infarction. (Tr. 161, 199). Plaintiff improved her left side weakness with physical therapy and was discharged from the hospital in late October. (Tr. 199).

On December 1, 1980, plaintiff complained of headaches and was examined by Dr. H.L. Kettler. Dr. Kettler stated that after two CAT scans it was evident that plaintiff had suffered a stroke in October of 1980. Plaintiff was given medication for her headaches. A repeat neurological examination was unremarkable. (Tr. 207).

From March of 1981 through April of 1982, plaintiff was treated for a minor eye

injury, corneal abrasion of the eye, laceration and injury to the left hand and contusion to the left foot. (Tr. 162, 163, 164, 165, 169, 170). In August of 1982, plaintiff was admitted to the hospital when she complained of headaches and left side weakness. (Tr. 172). She was given intensive physical therapy and was able to move her arm and leg upon discharge later in August. (Tr. 172).

From the period of November 17, 1982 until February 28, 1983, the plaintiff was an out-patient at the hospital. (Tr. 217). During that time she complained of headaches and pain in the back of the neck, as well as weakness in the left arm and left leg. The plaintiff was told to continue with her medication and to return periodically. (Tr. 217).

In a report dated December 23, 1982, Dr. Sidney Samet, acting as a consulting physician, stated that it was his impression that the plaintiff's left side weakness is caused by functional not organic reasons. (Tr. 190). Dr. Samet further stated that plaintiff was able to walk unaided and that the left side weakness was seen only on testing. (Tr. 191).

In a report dated December 19, 1983, Dr. Milton Tarlau, acting as a consulting physician, stated that he believes the plaintiff to be suffering from conversion hysteria. (Tr. 212). Dr. Tarlau concluded by saying that if the plaintiff had actually suffered a small infarct, the condition had largely resolved and that persistent symptoms are hysterical in character. (Tr. 212).

Plaintiff filed an application for disability benefits in November of 1982. Her claim was initially denied in January of 1983 and upon reconsideration in February. In November of 1983, a hearing was held before the Administrative Law Judge ("ALJ"). The ALJ denied plaintiff's claim in a decision dated February 10, 1984. On July 30, 1984, the Appeals Council denied plaintiff's request for review, thereby making the decision of the ALJ the final decision of the Secretary.

At the hearing before the ALJ, plaintiff testified that she has headaches on a daily basis and that she has severe ones four times a week. (Tr. 68, 74, 75). She further testified that she has blurred vision, that her left eye droops, that her left leg goes out, and that she cannot bend or stoop. (Tr. 63, 69). The plaintiff stated that she does no lifting around the house, that she can not hold anything in her left hand and does little if any cooking. (Tr. 70, 72). Most of her time is spent watching television. The plaintiff's husband appeared at the hearing, and his testimony supported that of plaintiff. Based upon the evidence of record and in consideration thereof, the ALJ made the following findings:

1. The claimant met the disability insured status requirements of the Act on October, 1980, the date the claimant stated she became unable to work, and continue to meet them through December 31, 1985.

2. The claimant has not engaged in substantial gainful activity since October, 1980.

3. The claimant has the following impairment: hysterical conversion reaction.

4. The claimant's allegation are exaggerated, are not supported by substantial medical evidence and are not credible.

5. The claimant does not have any impairment or impairments which significantly limit her ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment. 20 C.F.R. 404.1521 and 414.920(c).

6. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision. 20 C.F.R. 404.1520(c) and 416.-920(c).

(Tr. 23–24).

## DISCUSSION

Under the Social Security Act, judicial review of the final decision of the Secretary is limited to the question of whether the findings are supported by substantial evidence. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Secretary's decision is so supported, it must be affirmed. *Id.; Richardson v. Perales*, 402 U.S. 389, 91 S.Ct.

1420, 28 L.Ed.2d 842 (1971). "Substantial evidence" is defined as such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.1979). Therefore, the sole issue before this court is whether the Secretary's final decision should be sustained as being supported by substantial evidence.

After a careful review of the evidence of record, the Secretary's decision and the recommendation of the Magistrate, I am of the opinion that the decision of the Secretary should be affirmed.

The burden of proving a disability is on the plaintiff. 42 U.S.C. § 423(d)(5). Under the Act, a claimant is disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. 20 C.F.R. § 404.1505.

■ There are four factors which must be considered in determining whether the plaintiff is disabled. They are (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the plaintiff's age, educational background and work history. *Murphy v. Schweiker*, 524 F.Supp. 228, 231 (E.D.Pa.1981), *citing Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir.1972).

In the instant case, plaintiff contends that she has physical problems which render her disabled including left side weakness and headaches caused by a stroke. However, physical examination by two physicians indicate that the plaintiff's problems are functional in nature and not organic. (Tr. 190, 208). Dr. Sidney Samet stated that plaintiff had weakness of the left arm and left leg, but that the way it was elicited suggested that it was a functional weakness. (Tr. 190). Moreover, Dr. Samet noted there was no organic brain disease present, and that the plaintiff was able to walk unaided, and the weakness was only seen on testing. (Tr. 191).

Dr. Milton Tarlau reported that it was his opinion that the plaintiff was suffering from conversion hysteria. (Tr. 212). Dr. Tarlau offered several reasons supporting his conclusion. First, he stated that the patient walks dragging the left leg with an everted foot and the toe pointing out in contrast to the typical hemiplegic gait with the foot inverted and circumducted. (Tr. 211). Secondly, strength tests showed complete flacidity on the left side, and that the plaintiff could not move either upper or lower extremity against the examiner's hand even though no pressure was exerted by the hand yet the plaintiff could support her weight and walks without assistance. (Tr. 212). Dr. Tarlau further reported that there were inconsistencies between the history given by the patient and her husband as compared to the objective report of the doctors and hospital record suggesting a conscious exaggeration. (Tr. 212). Moreover, after having acknowledged the fact that the patient had a small infarct, Dr. Tarlau came to the conclusion that the condition had largely resolved and that the persistent symptoms are hysterical in character. (Tr. 212).

Plaintiff argues that the ALJ did not adequately consider Dr. Tarlau's "Medical assessment of ability to do related activities (Mental)." (Tr. 213–14). That report noted that plaintiff was unable to make occupational and social adjustments and that her emotional stability was achieved through conversion mechanisms. In contrast to this report, the report of Dr. Samet stated that the plaintiff was coherent and relevant and that she related appropriately to other people. (Tr. 192). In addition, Dr. Samet noted that plaintiff gave no indication of having a psychotic impairment which would restrict her daily activities. (Tr. 192). The ALJ did not ignore Dr. Tarlau's report. Rather he considered it but did not give it substantial weight in light of Dr. Samet's conflicting medical report and plaintiff's obvious exaggerations and inconsistencies.

■ Plaintiff next argues that the ALJ failed to give proper consideration to plaintiff's testimony concerning her subjective complaints of pain. The standard for evaluating subjective pain is (1) that subjective

complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence, (2) that subjective pain may support a claim for disability benefits, (3) that where such complaints are supported by medical evidence, they should be given great weight, and (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence. *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984).

In the instant case, the ALJ considered plaintiff's complaints of pain and found them to be inconsistent, contradictory and not supported by clinical evidence. Therefore, the ALJ concluded that they were exaggerated and not credible. (Tr. 22, 23).

 The record does not show that there is medical evidence to support plaintiff's assertion of pain. With regard to the plaintiff's headaches, a CAT scan and skull x-ray were conducted on October 10, 1980 and October 13, 1980 and both results were normal. (Tr. 159, 204). On October 14, 1980, the plaintiff underwent a cerebral arteriogram; results were normal. (Tr. 204). On August 9, 1982, a third CAT scan was performed which showed evidence of an old stroke, but no other abnormality was seen. (Tr. 206). A final CAT scan was performed on December 31, 1982, and the results were also normal. (Tr. 226). An examination of the test results and the reports by Dr. Samet and Dr. Tarlau demonstrates that the ALJ's decision was based on substantial evidence. Moreover, because the plaintiff's complaints of pain do not have clinical support, the ALJ does not need contrary medical evidence to support his findings.

 The next issue is whether the ALJ failed to properly use the vocational expert. The ALJ made his determination of disability based on the five step evaluation procedure required by the medical-vocational regulations promulgated by the Secretary. 20 C.F.R. § 404.1520(a); *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Santise v. Schweiker*, 676 F.2d 925 (3d Cir.1982). Under this regulation the ALJ considers current work activity, medical factors and lastly vocational factors. If a decision is made at any step of the evaluation further evaluation is unnecessary. 20 C.F.R. §§ 404.1520(a) and 416.920(a).

In this case, the ALJ made a reasonable determination at the second step of the process. (Tr. 20, 21). (Tr. 20, 21). This finding precluded the necessity of any further evaluation. I conclude based on a review of the medical evidence of record, the determination that plaintiff did not have a severe impairment was reasonable. Testimony of a vocational expert at this step is irrelevant. Therefore, the ALJ properly excluded the testimony of the vocational expert.

 The last issue is whether the ALJ exceeded the scope of his authority when he stated that after the hearing he witnessed the plaintiff walking two blocks to a parking lot without any limp. (Tr. 22, 23). I agree with Magistrate Scuderi that it was inappropriate to include the ALJ's personal out-of-court observation in his decision. Nevertheless, the ALJ's decision was not based solely upon this observation. It was based upon all of the evidence presented at the hearing which provided substantial support for the ALJ's determination.

Accordingly the report and recommendation of the Magistrate will be adopted and approved.