**Robert J. WEBER, Jr., Plaintiff**

v.

**Larry G. MASSANARI,[1] Acting Commissioner of the Social Security Administration, Defendant**

**No. CIV. A. 00–CV–5059.**

United States District Court, E.D. Pennsylvania.

June 6, 2001.

1. Larry G. Massanari became the Acting Commissioner of the Social Security Administration, effective March 29, 2001, succeeding William A. Halter. Under Federal Rule of Civil Procedure 25(d)(1) and 42 U.S.C. § 405(g), Larry G. Massanari is automatically substituted as the defendant in this action.

Howard B. Bass, Philadelphia, PA, for Plaintiff.

Nicholas Cerulli, William B. Reeser, Social Security Administration Office of the General Counsel, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

CARACAPPA, United States Magistrate Judge.

This action was brought pursuant to 42 U.S.C. § 405(g) seeking judicial review of

the final decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied the application of Robert J. Weber, Jr., for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act").

Presently before this court are the parties' cross-motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED, Defendant's motion for summary judgment is DENIED, and the case is REMANDED to the Commissioner for further proceedings consistent with this opinion.

### PROCEDURAL HISTORY

Weber filed an application for DIB on March 19, 1997, alleging a disability beginning on December 14, 1994, due to cardiac problems, emphysema, hypertension, lower back and left hip problems, and glaucoma. (Tr. 99–101, 111). This application was denied initially and upon reconsideration. (Tr. 84–86, 89–91). On March 2, 1999, an Administrative Law Judge ("ALJ") conducted a hearing and received testimony from Weber who was represented by counsel. Additional testimony was received from a vocational expert. (Tr. 32–80). At the hearing, Weber amended his onset date to November 8, 1996. (Tr. 35).

In his decision dated April 9, 1999, the ALJ denied Weber's claim for benefits. (Tr. 9–25). The Appeals Council denied Weber's request for review, making the ALJ's decision the final decision of the Commissioner. Having exhausted his administrative remedies, Weber filed a com-plaint with this court seeking review of the Commissioner's final decision denying his claim for benefits. Weber and the Commissioner subsequently filed cross-motions for summary judgment.

On April 3, 2001, upon consent of the parties, the Honorable John P. Fullam entered an order referring this case to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

### FACTUAL HISTORY

Weber was born on October 4, 1945 and was fifty-four years old at the time of the administrative hearing.[2] (Tr. 37, 99). He is divorced and has two daughters, neither of whom live with him. (Tr. 37, 38). Weber completed high school and several college courses. (Tr. 38). He has a past relevant work history as a general manager of a hardware store.[3] (Tr. 58). Weber quit that job after almost sixteen years of service due to a divorce-related depression. (Tr. 61, 62, 137).

Weber testified that the main problems affecting his ability to work are the continual pain in his back and leg, emphysema, chest pains, and depression. (Tr. 39). He has difficulty lifting objects and estimated that the heaviest weight he could lift is a half gallon of milk. Anything over that would adversely affect his breathing. (Tr. 40). Weber also stated that he could only walk a block before needing to rest "a little bit," that he could stand a half an hour at the most, and that he could sit for between fifteen minutes to a half hour. (Tr. 40, 41).

---

**2.** Under 20 C.F.R. § 404.1563(c), Weber is classified as a "person approaching advanced age" whose age along with a severe impairment and limited work experience, may seriously affect his ability to adjust to a significant number of jobs in the national economy.

**3.** The vocational expert testified that Weber's former employment would be usually characterized as skilled work with a light exertional level. (Tr. 70). He explained, however, that at this type of hardware store, Weber probably was also doing medium to heavy work. (Tr. 70–71).

He also testified that a physician suggested that he get a hip replacement, but his lack of finances has prohibited the operation. (Tr. 42). The pain he experiences is so severe that it disturbs his sleep. Pain medication sometimes does not relieve the pain. (Tr. 43). Weber also uses an inhaler to relieve the symptoms of emphysema when it causes him difficulty breathing. (Tr. 45). He described getting chest pains severe enough to take nitroglycerin tablets when he gets upset or becomes depressed. (Tr. 55). His last angina attack was approximately two weeks before the hearing. (Tr. 55). Weber's eyesight has also deteriorated in recent years and he cannot afford new glasses. (Tr. 65).

When asked if the inhaler or the nitroglycerin tablets cause him side effects, Weber responded that he sometimes feels drowsy and dizzy but does not know if that is due to the medication. (Tr. 46, 56).

Weber described experiencing severe chest pains while walking on a city street one day. A stranger drove him to an emergency room where he was administered heart medication. (Tr. 51). The record contains evidence of this November 8, 1996 visit to the emergency room. Hospital notes show that Weber complained of chest pain which had worsened since the previous night, of leg and arm pain, numbness, and said he had been "starting to pass out." (Tr. 196–202). A chest x-ray demonstrated that no acute cardiopulmonary disease was present. (Tr. 198). He told the staff that two years before this incident, a cardiologist had prescribed nitroglycerin tablets but Weber never filled the prescription. (Tr. 196). He was discharged with instructions to follow up with his family physician in two days. (Tr. 199).

Upon leaving that hospital, Weber began to again experience chest pains. He went to a different emergency room where a nurse gave him money for transportation to get to a homeless shelter.[4] While he remained a resident at the shelter, Weber was able to receive medical treatment. (Tr. 52).

Now, Weber lives by himself and depends on his friends to shop and cook for him. (Tr. 46, 64). He spends most of the day sleeping, but also watches television and listens to the radio. (Tr. 64). He goes to church on Sunday and relies on other church members for transportation. (Tr. 64). Once a month, a friend will take Weber out for a ride or to a movie. (Tr. 67).

During the hearing, Weber thought that he recognized the vocational expert as a former customer of his hardware store. (Tr. 58). The vocational expert testified that although he grew up near the hardware store, he moved out of that neighborhood in 1975, four years before Weber began working there. The vocational expert had no recollection of ever being in the hardware store or ever seeing Weber prior to the hearing. (Tr. 58–59, 69).

A couple of days after the hearing, counsel sent a letter to the ALJ insisting that the vocational expert lied at the hearing and did, in fact, know Weber. He added that Weber failed to object at the hearing because he did not want to contradict the vocational expert at the hearing and risk prejudicing his case. He requested a new hearing with a different vocational expert if there were insufficient evidence to grant his claim. (Tr. 98). In his decision, the ALJ rejected this request finding that the objection to the testimony was waived by the failure to make it at the hearing before the vocational expert testified when it

---

4. The record does not contain evidence of this hospital visit.

could have been more effectively dealt with, and that Weber had not demonstrated any evidence of animus toward him on the part of the vocational expert. (Tr. 19–20).

The record also contains a cardiology evaluation performed by Stanley R. Berger, M.D., on August 8, 1997 upon the request of James R. Smith, M.D. (Tr. 226–227). Upon examination and interpreting an EKG, Dr. Berger opined that Weber had angina. He requested any medical records Dr. Smith might have in order to ascertain whether Weber's previous hospitalizations were for angina or an actual myocardial infarction, as Weber claimed. (Tr. 226). Dr. Berger also stressed with Weber the importance of smoking cessation, and recommended a treadmill exercise stress test. (Tr. 226). Although Weber had stopped smoking by the time of the hearing, he has a forty-five year history of smoking two packs of cigarettes per day. (Tr. 217).

Weber underwent this recommended stress test on August 13, 1997, but the test was deemed equivocal because of Weber's inability to exercise adequately. Due to severe hip pain, the test was stopped after four minutes. Weber experienced no chest pain. (Tr. 259).

B. Kushner, M.D., a state reviewing physician, completed a Physical Residual Functional Capacity Assessment form dated May 18, 1998. After review of the evidence, Dr. Kushner opined that Weber could occasionally lift/carry twenty pounds;

that he could frequently lift/carry ten pounds; that he could stand/walk about six hours in an eight hour workday; that he could sit about six hours in an eight hour workday; and that he had an unlimited ability to push/pull. (Tr. 295). Dr. Kushner further opined that Weber could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 296).

### DISCUSSION

The role of this court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's final decision. *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986); *Newhouse v. Heckler,* 753 F.2d 283, 285 (3d Cir.1985). The factual findings of the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Steadman v. SEC,* 450 U.S. 91, 99, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979).

The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims. This five-step evaluation is codified at 20 C.F.R. § 404.1520.[5] The Act

---

**5.** These steps are summarized as follows:

1. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed. If not, proceed to Step 2. 20 C.F.R. § 404.1520(b).
2. If the claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not

disabled is directed. If there is a severe impairment, proceed to Step 3. 20 C.F.R. § 404.1520(c).
3. If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. If not, proceed to Step 4. 20 C.F.R. § 404.1520(d).

provides that a claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 404.1505. In pursuing a disability claim under the Act, the burden is solely upon the claimant to prove the existence of a disability. 42 U.S.C. § 423(d)(5). The claimant must provide the medical evidence which indicates that there is an impairment and the extent of its severity. 42 U.S.C. § 423(d)(5). Other factors which the Commissioner must consider in determining whether a claimant is disabled within the meaning of the Act are: (1) medical data and findings; (2) expert medical opinions; (3) subjective complaints; and (4) the claimant's age, educational background, and work history. *Hammerstone v. Heckler*, 635 F.Supp. 1089, 1092 (E.D.Pa.1986), (citing *Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir.1972)). A claimant satisfies his burden by showing an inability to return to former work. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the ability to perform specific jobs that exist in the national economy. *Id.;* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1520, *et seq.*

In this case, the ALJ found that the medical evidence established that Weber suffers from coronary artery disease [6]; hypertension;· degenerative arthritis of the lumbar spine and left hip; depression; and he is status post myocardial infarction, impairments which are severe but which do not meet or equal the criteria of any of the impairments listed in the regulations. (Tr. 20–21, Finding No. 3). The ALJ also found that Weber's statements concerning his impairments and their impact on his ability to work are not entirely credible. (Tr. 21, Finding No. 4). The ALJ determined that Weber lacked the residual functional capacity to lift and carry more than twenty pounds, or stand/walk for more than one-half hour without the ability to briefly sit or stretch for one to two minutes; that he cannot more than occasionally engage in climbing, balancing, stooping, kneeling, crawling or crouching; that he cannot have more than moderate exposure to fumes, dust, gases, chemicals or other respiratory irritants; and that he cannot work in exposure to cold or heat. (Tr. 21, Finding No. 5). This assessment resulted in the determination that Weber could not perform his past relevant work. (Tr. 21, Finding No. 6). Finally, using the medical vocational guidelines (the "grids") as a framework and the testimony of the

4. If the claimant retains residual functional capacity to perform past relevant work, a finding of not disabled is directed. If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step 5. 20 C.F.R. § 404.1520(e).

5. The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant is or is not disabled. 20 C.F.R. § 404.1520(f).

See also *Santise v. Schweiker*, 676 F.2d 925, 926–7 (3d Cir.1982).

6. **Coronary artery disease** (CAD) may be defined as atherosclerosis of the coronary arteries, which may cause angina pectoris, myocardial infarction, and sudden death. Both genetically determined and avoidable risk factors contribute to the disease; they include hypercholesterolemia, hypertension, smoking, diabetes mellitus, and low levels of high density lipoproteins. *Dorland's Illustrated Medical Dictionary ("Dorland's")* 514 (29th ed.2000).

vocational expert, the ALJ found that although Weber is unable to perform the full range of light work, he is capable of making an adjustment to work which exists in significant numbers in the national economy, and is, therefore, not under a disability as defined in the Act. (Tr. 21, Findings No. 11, 12, and 13).

Weber disagrees with the decision of the ALJ, arguing that the ALJ: 1) failed to issue findings regarding Weber's uncontradicted pulmonary pathology; 2) posed a flawed hypothetical question to the vocational expert; 3) improperly ·discounted Weber's testimony as to his subjective complaints; and 4) described Weber's mental impairment as both "severe" and "non-severe." The Commissioner argues that substantial evidence supports the ALJ's decision.

Weber first argues that the ALJ failed to issue findings regarding Weber's uncontradicted pulmonary pathology. After a careful review of the evidence, this court is constrained to agree.

The record in this case is replete with evidence consisting of consultative examinations, pulmonary function tests, hospital notes, and Weber's own testimony, that demonstrates that Weber suffers from chronic obstructive pulmonary disease.[7]

For example, on May 23, 1997, Donald Corey, M.D., an internist, performed a consultative general examination of Weber upon the request of the Commissioner. (Tr. 217–220). Dr. Corey noted that Weber complained of chest pain associated with exertion, i.e., after walking two or three blocks, or climbing two flights of stairs. This pain is resolved with nitroglycerin tablets. (Tr. 217). Weber also complained of dyspnea upon exertion related to em-

physema and of pain in his lower back and left hip relieved by nonsteroidal anti-inflammatory drugs. (Tr. 217–218). Dr. Corey diagnosed coronary artery disease which appears to have a stable anginal pattern; a history of chronic obstructive pulmonary disease; history of hypertension, currently normal-tensive; degenerative joint disease, most severe in his left hip; and a history of psoriasis. (Tr. 220). On a Medical Source Statement of Claimant's Ability to Perform Work–Related Physical Activities, Dr. Corey opined that Weber could frequently lift up to ten pounds and occasionally lift between twenty to twenty-five pounds, stand/walk for two to less than six hours, sit for less than six hours, and that pushing/pulling is limited in his lower extremities. (Tr. 223). Dr. Corey also opined that Weber could occasionally climb, stoop, kneel, crouch, and crawl, but that he could never balance. (Tr. 224). No other physical or environmental restrictions were established. (Tr. 224).

Pulmonary function tests were performed on July 9, 1997 at the request of the Commissioner. (Tr. 169). These tests showed moderate airway obstruction which did not improve after the use of a bronchodilator. (Tr. 229–230). Twenty days later, the tests were repeated and again showed moderate airway obstruction. (Tr. 244–245). In his decision, the ALJ commented that the results of the first test showed Weber as possibly disabled under the Commissioner's Listings for pulmonary impairments. (Tr. 15).

In March 1998, Walter C. Goldstein, M.D., also performed a consultative evaluation of Weber at the request of the Commissioner. (Tr. 273–276). Upon examination, Dr. Goldstein diagnosed coro-

---

**7. Chronic obstructive pulmonary disease** (COPD) may be defined as any disorder characterized by persistent or recurring obstruc- tion of bronchial air flow, such as chronic bronchitis, asthma, or pulmonary emphysema. *Dorland's* at 513.

nary artery disease with history of myocardial infarction, and with stable angina; essential hypertension; chronic obstructive pulmonary disease with pulmonary emphysema, and asthmatic bronchitis; and degenerative arthritis of the lumbar spine and left hip. Dr. Goldstein further opined that Weber's angina seemed stable and his blood pressure is controlled, that he has had major damage to his heart, and that he should stop smoking. (Tr. 275). On a Medical Source Statement of Claimant's Ability to Perform Work–Related Physical Activities, Dr. Goldstein opined that Weber could frequently lift/carry less than ten pounds, that he could stand/walk less than two hours, that he could sit less than six hours, and that he has unlimited pushing and pulling. He further opined that Weber could frequently climb, stoop, kneel, crouch, crawl, but could never balance; and that he should avoid working around chemicals, dust, fumes, odors, and gases. (Tr. 278).

Further, the notes from the emergency room visit in November 1996 indicate that Weber was also suffering from an exacerbation of his chronic obstructive pulmonary disease. (Tr. 196).

As previously discussed, Weber testified regarding his limited breathing capacity. For example, he indicated that if he were to lift anything heavier than a half gallon of milk, it would adversely affect his breathing; that he could only walk a block before needing to rest "a little bit;" and that he uses an inhaler to relieve the symptoms of emphysema when it causes him difficulty breathing. (Tr. 40, 44–45).

What concerns this court is that, in spite of this evidence of a pulmonary impairment, the ALJ did not include pulmonary disease in the list of Weber's severe impairments, or in the alternative, find the impairment "non-severe." (Tr. 13, 15, 20). In his decision, the ALJ included a discus-

sion of Weber's pulmonary function tests but did not discuss the impact that his pulmonary impairment might have on his residual functional capacity:

> While there are some pulmonary function test (PFT) results showing claimant as possibly disabled under the pulmonary Listings on July 9, 1997, there is a wide variation between tests on that date, including a 50% *drop* in functioning post-bronchodilator. Moreover, some three weeks later, another set of PFTs shows claimant doing much better, though again the post-bronchodilator test was reduced; and this time effort was assessed as "fair." In any event, the earlier tests appear not reliable and reproducible.

(Tr. 15)(emphasis in original).

In evaluating a claim for benefits, the ALJ must consider all of the evidence in the case. § 416.920(a); *Wier v. Heckler*, 734 F.2d 955, 963 (3d Cir.1984). The ALJ must "explicitly" weigh all relevant, probative, and available evidence. *See Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir.1994) (citing *Dobrowolsky*, 606 F.2d at 407). *See also Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir.1986); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). Moreover, the ALJ must provide some explanation for a rejection of probative evidence that would suggest a contrary disposition. *Adorno v. Shalala*, 40 F.3d at 48 (citing *Brewster v. Heckler*, 786 F.2d at 585). Although the ALJ may properly accept some parts of the medical evidence and reject other parts, the ALJ must still consider all the evidence and give some reason for discounting the evidence he rejects. *Id.* (citing *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983)). In the absence of such an indication, the reviewing court cannot determine whether significant probative evidence was deemed not credible or whether it was simply ig-

nored. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).

[7] Here, the ALJ discussed the two pulmonary function test results and how they varied. However, it is clear that both test results indicated moderate airway obstruction. (Tr. 229, 246). The record also contains the reports of examining physicians and hospital notes, discussed above, which revealed that Weber suffers from chronic obstructive pulmonary disease. Notwithstanding this objective medical evidence and the ALJ's own concession that the results of the first test suggested a possible disability, the ALJ made no determination of the severity of the pulmonary impairment. Without the expected analysis, the court is left wondering whether the ALJ properly considered the impact of this impairment on his disability decision.

Therefore, this court is constrained to remand this case to the Commissioner. Upon remand, the ALJ should reconsider the evidence concerning Weber's pulmonary impairment, make a determination of the severity of the impairment and its impact, either separately or in combination with his other impairments, upon Weber's ability to perform work which exists in significant numbers in the national economy.

Weber also argues that the ALJ posed a flawed hypothetical question to the vocational expert. Because additional functional limitations may be assessed by the ALJ after a reconsideration of Weber's pulmonary impairment, this court agrees.

[8, 9] As discussed above, the ALJ found that Weber was precluded from performing his past relevant work. To determine whether Weber was capable of performing other substantial gainful activity, the ALJ relied upon the testimony of a vocational expert. Testimony of a vocational expert constitutes substantial evi-

dence for purposes of judicial review where a hypothetical question considers all of a claimant's impairments which are supported by the medical record. *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective medical evidence contained in the record. *Chrupcala v. Heckler*, 829 F.2d at 1271. It is not necessary for the ALJ to include facts that are supported by a claimant's subjective testimony only. *Id.*

Here, the ALJ posed a hypothetical question to the vocational expert to see if any work existed in the national economy that a claimant such as Weber could perform given his impairments. He asked the vocational expert to assume a claimant able to perform light work with significant additional non-exertional impairments such as being exposed to no more than moderate amounts of fumes, dusts, gases, chemicals or other respiratory irritants; no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling and no exposure to extremes of heat or cold. The vocational expert testified that such an individual could perform jobs such as file clerk, general clerk, records clerk, and small parts assembly worker, all of which jobs exist in significant numbers in the national economy. (Tr. 74–75).

The ALJ incorporated into the hypothetical the avoidance of moderate amounts of respiratory irritants, a limitation reasonably expected to result from a pulmonary impairment. However, this court is concerned that Weber's pulmonary impairment may further impact his residual functional capacity.

[10] Because of this court's finding that the ALJ did not properly analyze Weber's pulmonary impairment and its possible functional limitations, this court must conclude that the limitations enumerated in the hypothetical may not be a

complete list. Thus, this court finds that, under these circumstances, the testimony of the vocational expert cannot provide substantial evidence to support the ALJ's determination that a significant number of jobs exists in the national economy which Weber could perform.

Therefore, upon remand, should the ALJ find that Weber is capable of performing work at a lower exertional level than previously determined, and/or that Weber's pulmonary impairment causes additional functional limitations, the ALJ must hold a supplemental hearing in order to receive the testimony of a vocational expert in order to determine whether a significant number of jobs exists in the national economy which Weber could perform.[8]

■ Weber also argues that the ALJ improperly discounted his testimony regarding his subjective complaints. Again, this court must agree.

■ A claimant's testimony of subjective complaints is entitled to great weight, particularly when supported by competent medical evidence. *Dobrowolsky v. Califano*, 606 F.2d at 409. Where such testimony is reasonably supported by medical evidence, an ALJ may not discount such evidence without contrary medical evidence. *Smith v. Califano*, 637 F.2d 968 (3d Cir.1981). Even when not fully confirmed by objective medical evidence, subjective complaints must be seriously considered. *Smith v. Califano*, 637 F.2d at 972; *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir.1984).

Here, as discussed above, Weber testified that he experiences constant pain in his back and leg, emphysema, chest pains, and depression; that the pain disturbs his sleep; that lifting anything over a half gallon of milk would adversely affect his breathing; that he could only walk a block before needing to rest; that he could only stand a half an hour and sit for between fifteen minutes to a half hour. (Tr. 39, 40, 41).

■ Although the ALJ is required to give great weight to the claimant's testimony of subjective complaints, he has the right, as the fact finder, to reject partially, or even entirely, such subjective complaints if they are not fully credible. *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974). When considering the subjective complaints, the ALJ is entitled to discredit a claimant's testimony, but must state the facts upon which the conclusion is based, which both must be clear and reasonable. *Atkins v. Bowen*, 690 F.Supp. 383, 389 (E.D.Pa.1988). Relevant factors include the claimant's statements, appearance, and demeanor; medical signs and laboratory findings; treatment and response; and physicians' opinions regarding credibility and severity of claimant's subjective complaints. *See* Social Security Ruling ("SSR") 96–7p (1996).

In this case, the ALJ reviewed the evidence of record, found that Weber's testimony is not fully credible, and provided the following analysis:

> The Administrative Law Judge does not find the claimant's testimony fully credible. He stated that he left his job as a hardware store manager because he was going through a divorce and did not like the way things were going. Further, there is no objective medical evidence or treatment for the past year or so, and it

8. Should the ALJ determine that his findings require the additional testimony of a vocational expert, this court strongly suggests that, in the interest of the non-adversarial nature of Social Security proceedings, the ALJ secure the services of a different vocational expert than the one Weber insisted he recognized as a former customer.

appears from the medical record that the claimant's depression, while perhaps severe at some point relatively shortly after he left work in 1994, did not last at that level for a period of twelve months; and certainly not since his amended date of alleged onset of disability. Further, the claimant could not identify any specific symptoms of his depression, except to say that he cried with certain television shows and sleeps a lot.

The claimant testified that he can lift only one-half gallon of milk. This is not credible, especially in light of the fact that a short time ago, the claimant was lifting over 100 pounds as a hardware store manager, and there has not been such a dire change in his physical condition since then. Based upon the foregoing, the Administrative Law Judge does not find the claimant's testimony to be fully credible.

(Tr. 16).

██ Deference must be given to the ALJ's determination in issues of credibility when reviewing the Commissioner's final decision, so long as the ALJ discusses the issue and his finding is supported by substantial evidence. *Alvarez v. Secretary of Health and Human Services,* 549 F.Supp. 897, 899–900 (E.D.Pa.1982); *see also Davidson v. Harris,* 502 F.Supp. 1208, 1213 (E.D.Pa.1980).

This court is not satisfied with the ALJ's explanation for discounting Weber's complaints. Because the record contains objective medical evidence that could reasonably support Weber's testimony, this court would expect that his testimony would be entitled to great weight, especially where no contrary medical evidence exists. *Dobrowolsky v. Califano,* 606 F.2d at 409; *Smith v. Califano,* 637 F.2d at 972.

██ Further, testimony regarding subjective complaints from a claimant with a long work record is entitled to substantial credibility. *Taybron v. Harris,* 667 F.2d 412, 415 (3d Cir.1981). Weber worked for the same hardware store from May 1979 through December 1994. (Tr. 137). That extensive work history should have also entitled Weber's testimony great weight.

Upon remand, the ALJ should reconsider the evidence of record and re-evaluate Weber's credibility in light of the combination of the objective medical evidence in the record and Weber's long work history.

Weber next argues that the ALJ inconsistently described Weber's mental impairment as both "severe" and "non-severe." This claim is meritless.

Although the ALJ inadvertently included depression in the list of Weber's severe impairments, it is clear from a careful reading of the decision that the ALJ unequivocally found that Weber's depression is a non-severe impairment. Therefore, this claim is meritless.

The Commissioner has promulgated regulations dealing specifically with the evaluation of mental impairments. *See* 20 C.F.R. §§ 404.1520a, 416.920a; *Woody v. Secretary of Health and Human Services,* 859 F.2d 1156, 1159 (3d Cir.1988). In assessing mental disorders to determine disability, the Commissioner is required to consider medical evidence including certain defined clinical signs, symptoms, and/or laboratory or psychological test results. Any impairment found should be analyzed under the categories of mental impairments in the listings consistent with such clinical findings. *Id.* The Commissioner must also determine the severity of the impairment by assessing the functional limitations resulting from it. 20 C.F.R. §§ 404.1520a(b)(3) and 416.920a(b)(3).

As previously discussed, it is clear that the ALJ determined that Weber's mental impairment is not severe:

Finally, the claimant's depression, discussed elsewhere, is not severe...[I]t appears from the medical record that the claimant's depression, while perhaps severe at some point relatively shortly after he left work in 1994, did not last at that level for a period of twelve months; and certainly not since his amended date of alleged onset of disability. Further, the claimant could not identify any specific symptoms of his depression, except to say that he cries with certain television shows and sleeps a lot (a factor that he also attributed to possible medication side effects)...[T]he Administrative Law Judge concludes that the claimant does suffer from depression and that he likely experiences no more than slight limitation in activities of daily living; no limitation at all in social functioning; and only seldom experiences deficiencies of concentration, persistence or pace. Again, there have been no deteriorations or decompensations at work or in a work-like setting. Hence, the claimant has a non-severe mental impairment.

(Tr. 15, 16, 17–18).

■ This court finds that the record contains substantial evidence to support the ALJ's determination. For example, on March 23, 1998, psychologist Joseph F. Foote, Ph.D., performed a psychological evaluation of Weber at the request of the Commissioner. (Tr. 279–284). Dr. Foote reported that the evaluation demonstrated no evidence of delusions, ideas of reference or preoccupations; that Weber's abstract thinking and intelligence were within normal limits; and that Weber feels that all of his problems are related to his medical conditions. (Tr. 282–283). Dr. Foote also opined, "Although [Weber] appears to have difficulty with both depression and concentration, this does not appear to be the degree that would interfere with his work situation. [Weber] reports that the

only thing that keeps him from working at this time is medical problems and he does not believe his depression would interfere with work." (Tr. 283). Dr. Foote noted, "At this time, I do not believe his psychological problems, depression and concentration, are severe enough to affect his ability to deal with work situations or deal with stressful situations." (Tr. 283). Dr. Foote diagnosed major depression with moderate symptoms and one incident of psychotic symptoms. (Tr. 284). He finally opined that there would probably be no improvement in the depression until Weber's medical problems and life situation improve. (Tr. 284).

Upon review of the evidence, Helen S. Parshall, Ph.D., a state reviewing psychologist, completed a PRTF dated April 2, 1998. Dr. Parshall opined that Weber suffered from an affective disorder, namely major depression—moderate, but that this psychiatric impairment is not severe. (Tr. 285, 288). In rating the severity of the impairment, Dr. Parshall indicated that Weber had no restriction of activities of daily living; that he had slight difficulties in maintaining social functioning; that he seldom had deficiencies of concentration, persistence or pace; and that he never had episodes of deterioration or decompensation in work or work-like settings. (Tr. 292). These degrees of limitation do not satisfy the requirements of the listings for mental impairments.

After a careful review of the evidence, this court finds that the ALJ properly determined that Weber's depression is a non-severe impairment, a determination which is supported by substantial evidence in the record.

An Order follows.

### ORDER

AND NOW, this 5th day of June, 2001, upon consideration of the parties' cross-

motions for summary judgment, and after a careful review of the entire record, IT IS ORDERED that:

1. The Plaintiff's motion for summary judgment is GRANTED.

2. The Defendant's motion for summary judgment is DENIED

3. The case is REMANDED in accordance with the fourth sentence of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with this opinion.

FURTHERMORE, pursuant to Federal Rule of Civil Procedure 58, JUDGMENT IS ENTERED reversing the decision of the Commissioner that denied benefits to plaintiff Robert J. Weber, Jr. This case shall be closed for statistical purposes.